UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK DAVID BAKHIT,<br><br>　　　　Plaintiff(s),<br><br>　v.<br><br>POLAR AIR CARGO,<br><br>　　　　Defendant(s). | No. C10-1927 BZ<br><br>**ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY JUDGMENT** |

　　　Defendant Polar Air Cargo hired plaintiff Mark Bakhit in 2000 as a first officer, who is second in command of an aircraft.[1] In the ensuing years, plaintiff experienced a number of proficiency problems which resulted in unsatisfactory evaluations and in his being placed in Polar's Proficiency Watch Program.[2] As defendant learned in discovery

---

　　[1]　Except where noted otherwise, these facts are based on the joint statement of undisputed facts.

　　[2]　The parties have consented to the Court's jurisdiction for all proceedings, including entry of final judgment under 28 U.S.C. § 636(c).

1

1  in this case, plaintiff had also experienced performance
2  problems with his prior employer.
3       In 2006, Bakhit began a two year medical leave caused by
4  a back injury he suffered roller blading.  The injury was
5  unrelated to his work and his leave was granted under the
6  terms of the Collective Bargaining Agreement (CBA) between
7  defendant and plaintiff's union.  When he was cleared to
8  return to work, Federal Aviation Authority (FAA) regulations
9  required that he be requalified as a pilot.  Plaintiff
10 undertook the requalification process over the next several
11 months, and experienced a number of performance problems,
12 ultimately resulting in suspension of plaintiff's pilot
13 license and termination by defendant.  Plaintiff
14 unsuccessfully challenged his termination in a union grievance
15 procedure and lost the appeal of the FAA's suspension of his
16 license.  He then filed this lawsuit alleging nine claims,
17 most of which are premised on his theory that defendant
18 discriminated against him because he was perceived as being
19 disabled.  Defendant has now moved for summary judgment on all
20 nine claims.
21      Two of plaintiff's claims are that defendant is liable
22 under the California Fair Employment and Housing Act (FEHA)
23 for failing to engage in an interactive process and failing to
24 accommodate plaintiff's disability.  Defendant argues that
25 there is no evidence to support either of these allegations.
26 Because plaintiff has not opposed this argument, or pointed to
27 any evidence to support these claims, defendant's motion is
28 **GRANTED** on these two claims.

Plaintiff also alleged that defendant violated the California Family Rights Act (CFRA) and the Family Medical Leave Act (FMLA) by retaliating against plaintiff for taking a medical leave of absence.  Defendant initially contends that these claims, along with plaintiff's retaliation claims under FEHA and the American Disabilities Act (ADA), should be dismissed because plaintiff failed to raise them in his initial complaint to the EEOC.  See Yurick v. Superior Court, 209 Cal.App.3d 1116, 1121-23 (1989)(holding that the scope of the written administrative charge defines the permissible scope of the subsequent civil action).  I am not persuaded by this argument.  In his EEOC charge, plaintiff checked the box for both disability discrimination and retaliation.  Bakhit Deposition, Exhibit 33.  Plaintiff's charge also explained that defendant terminated his employment after he had returned from an approved medical leave of absence.  Id.  Because EEOC charges are liberally construed, particularly for complainants that are acting pro se, I find that plaintiff adequately raised his retaliation allegations in his administrative complaint.  See Robinson v. Adams, 847 F.2d 1315, 1319 (9th Circ. 1987)("Particularly where, as here, a layperson brings a Title VII action pro se, a liberal construction of the statute's technical requirements is appropriate"); see also Sosa v. Hiraoka, 920 F.2d 1451, 1456-1458 (9th Cir. 1990).

Plaintiff's CFRA and FMLA claims, however, are only actionable if plaintiff can establish that he exercised or attempted to exercise his rights under each respective statute.  See Dudley v. Dept. of Transp., 90 Cal.App.4th 255,

3

261 (2001)(one of the elements of a retaliation in violation of CFRA claim is that "the plaintiff exercised her right to take leave for a qualifying CFRA purpose"); Bachelder v. America West Airlines, Inc., 259 F.3d 1112, 1125 (9th Cir. 2001)(to prevail on her FMLA claim, plaintiff must "prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her").[3]  Here, there is nothing in the record that suggests plaintiff ever exercised or attempted to exercise his rights under either the CFRA or FMLA.  Plaintiff concedes that when he took his medical leave, it was under the terms of the CBA and not pursuant to the leave provisions of the CFRA or FMLA.  Bakhit Deposition at 175, 177.  Because there is no evidence that plaintiff ever attempted to exercise his rights under either the CFRA or FMLA, defendant's motion with respect to these claims is **GRANTED**.

Defendant next challenges plaintiff's claims that it is liable for unlawful disability discrimination under the FEHA and ADA.  Both parties agree that the three-step burden-shifting analysis set forth in McDonnell Douglas Corporation v. Green, 411 U.S. 792, 802 (1973) applies.  See also Guz v.

---

[3] The CFRA and FMLA's statutory language prohibits retaliation only after employees attempt to exercise their rights under the statutes.  See Cal. Gov. Code § 12945.2(l)(it is unlawful for an employer "to refuse to hire, or to discharge, fine, suspend, expel, or discriminate against, any individual because of [that] *individual's exercise of the right to family care and medical leave*")(emphasis added); 29 U.S.C. § 2615(a)(1)(it is unlawful for an employer to "interfere with, restrain, or deny *the exercise of or the attempt to exercise any right provided under this subchapter*")(emphasis added).

1   Bechtel Nat. Inc., 24 Cal.4th 317, 354 (2000)(adopting the
2   McDonnell Douglas test for discrimination claims under FEHA).
3   Accordingly, plaintiff bears the initial burden of making out
4   a prima facie case against defendant by showing that: (1) he
5   is a disabled person within the meaning of FEHA or the ADA;
6   (2) he is qualified to perform the essential functions of the
7   job; and (3) he was subject to an adverse employment action
8   because of his disability.  Faust v. Cal. Portland Cement Co.,
9   150 Cal.App.4th 864, 886 (2007); Kennedy v. Applause, Inc., 90
10  F.3d 1477, 1481 (9th Cir. 1996).  If plaintiff establishes a
11  prima facie case, the burden of production shifts to the
12  defendant to articulate a legitimate, nondiscriminatory reason
13  for its employment decision.  McDonnell Douglas, 411 U.S. at
14  802.  Once the defendant rebuts the inference of
15  discrimination, the plaintiff must show that the articulated
16  reason for the employment action is a pretext or cover-up for
17  unlawful discrimination.  Id.
18      Neither party sufficiently addresses whether plaintiff,
19  who was cleared to return to work after taking a two-year
20  medical leave for his injured back, is disabled under FEHA or
21  the ADA.  Defendant argues that plaintiff is not disabled
22  under both statutes, but fails to address the provision of
23  FEHA that considers an employee to be disabled if he has a
24  record or history of a disorder or condition that limits a
25  major life activity and this is known to the employer.
26  See Cal. Gov. Code § 12926(k)(3).  FEHA's definition of
27  disability is construed broadly and does not require proof of
28  an actual or existing disability.  See Franco v. Pier 1

5

Imports, Inc., 2008 WL 4217848 at *14-15 (C.D. Cal. 2008)(finding an employee was disabled under FEHA because her employer knew from her medical history that she had previously suffered from chronic fatigue, nerves, low blood count, and a small ulcer).  At the same time, plaintiff does not address the ADA's requirement that for an employee to be regarded as disabled, he must provide evidence of the employer's "misperception" or subjective belief that the employee is substantially impaired.  Walton v. U.S. Marshals Service, 492 F.3d 998, 1006 (9th Cir. 2007).  Here, plaintiff has not provided any evidence that defendant believed he was substantially impaired after returning from his leave of absence.

In any event, even assuming that plaintiff was a qualified individual under both the FEHA and ADA, plaintiff still fails to raise a triable issue that he was subjected to an adverse employment action **because** of his disability.  Plaintiff has submitted evidence that he was not properly trained or fairly tested by defendant during the recertification process.  But these are not issues in his lawsuit.  For plaintiff to prevail on this motion, he must connect defendant's conduct to his disability and establish that there is a triable issue under the causation element of his claims.  See Granillo v. Exide Technologies, Inc., 2011 WL 2535112 at *11 (C.D. Cal. 2011)(explaining that the employee has the burden to direct the Court to evidence that demonstrates that his termination was a result of his disability).

6

1      Plaintiff, rather than submitting evidence showing such a
2 connection, has instead presented evidence that has no bearing
3 to his disability.  For instance, plaintiff points to the
4 following evidence: (1) defendant refused to allow plaintiff
5 to have a union observer present during plaintiff's
6 proficiency checks; (2) one of plaintiff's line checks
7 consisted of two legs rather than the usual one leg; (3)
8 plaintiff was forced to use an inferior simulator when
9 completing his proficiency check; (4) plaintiff was asked oral
10 questions during his line check which had not been done in the
11 past; (5) defendant permitted a representative from the FAA to
12 be present during plaintiff's third line check; and (6)
13 plaintiff was insulted, harassed, and specifically threatened
14 that his employment would be terminated.  This evidence might
15 allow plaintiff to file employment related claims, which he
16 has not done here, but it does not show that defendant made
17 any employment decisions based on a perception that plaintiff
18 was disabled.
19      The same is true for plaintiff's evidence that three
20 other pilots who returned from medical leave between 2008 and
21 2010 were terminated by defendant after they failed their
22 proficiency checks and were not recertified.  Docket No. 66 at
23 57-59.  Contrary to plaintiff's argument, this evidence is
24 also missing a causal link — that defendant terminated the
25 pilots because they were disabled.  FAA regulations required
26 defendant's pilots to complete a recertification process
27 immediately after they returned from a leave of absence.
28 Three pilots, whose disability status is unclear from this

1 record, failing to complete the recertification process might
2 raise issues with defendant's training programs and testing
3 protocols, but, without more, it does not connect defendant to
4 any violations of the disability laws.  This is particularly
5 true since all three pilots may have been terminated solely on
6 the grounds that they failed their proficiency checks.

7   Plaintiff points out that defendant's Chief Pilot,
8 Captain Chris Agnini, in 2008 told the union's safety
9 representative that defendant needed to "get rid of some of
10 the weaker pilots," such as plaintiff.[4]  Kooistra Declaration
11 at ¶ 2.  When the representative asked Captain Agnini whether
12 he had any safety concerns about plaintiff's flying abilities,
13 Agnini provided no further explanation and ended the
14 conversation.  Id.  Agnini later testified at his deposition
15 that he had no opinion as to plaintiff's flying abilities
16 prior to plaintiff taking a medical leave.  Agnini Deposition
17 at 22.  Plaintiff argues that if Captain Agnini did not
18 believe that plaintiff was an unsafe pilot, his reference to
19 plaintiff as "weak" while plaintiff was on medical leave
20 supports plaintiff's allegation that there was a
21 discriminatory motive behind defendant's actions.  This
22 evidence is the closest that plaintiff comes to making a
23 causal connection between defendant's actions and his physical
24 condition, but it is still a stretch.  It requires me to infer
25 that Captain Agnini's out-of-court statement, in which he may
26 have been referring to plaintiff as either a poorly performing

---

28 [4]   Defendant's hearsay objection to this evidence is **OVERRULED**.  See Evidence Rule 801(d)(2).

8

pilot or someone who was physically weak, coupled with his failure to continue the conversation is evidence of discrimination because of plaintiff's back injury. In any event, even if I were to find that plaintiff has established his prima facie case based on this evidence, plaintiff's claims would still fail under the next steps of the McDonnell Douglas burden-shifting analysis.

McDonnell Douglas requires defendant to provide legitimate, nondiscriminatory reasons for its employment actions if plaintiff were to establish his prima facie case. 411 U.S. at 802. It is not difficult for defendant to provide such reasons. Defendant points to a plethora of evidence that plaintiff lacked the necessary pilot skills after returning from his medical leave and failed to pass the FAA-required recertification process. See Docket No. 56 at 3-9. Due to this failure, plaintiff lost his pilot's license and his employment was terminated.[5] Id.

With defendant having successfully rebutted the inference of discrimination, the burden now shifts back to plaintiff to

---

[5] Substantial portions of the parties' briefs focus on the degree to which I am bound by the decisions in the CBA grievance procedure and the FAA license suspension procedure. Defendant urges me to apply collateral estoppel such that all factual issues plaintiff seeks to raise are foreclosed. Plaintiff urges me to ignore both decisions. To give plaintiff the benefit of the doubt, I have reviewed the evidence both sides have presented since it is not clear that issues such as whether defendant perceived plaintiff as being disabled were actually present in those proceedings. However, the fact remains that plaintiff's license was suspended and the suspension upheld on appeal, and that without a license, plaintiff cannot fly. Moreover, many of the facts upon which those decisions were based are not being disputed here. See e.g., JSU nos. 28-60.

9

show that defendant's explanation is a pretext or cover-up for disability discrimination. McDonnell Douglas, 411 U.S. at 802. Plaintiff cannot meet this burden for the same reason it was difficult for him to establish his prima facie case. There is no evidence on this record which shows that defendant acted because of plaintiff's disability rather than the other reasons set out by defendant. Once again, evidence that plaintiff's training was inadequate or his recertification process was unfair or that he was insulted and threatened does not rebut defendant's nondiscriminatory reasons because this evidence has no connection to plaintiff's disability. Because the evidence submitted by plaintiff would not permit a reasonable jury to find that he was terminated due to his disability, defendant's motion on these disability discrimination claims is **GRANTED**.

Plaintiff's other claims allege that defendant is liable for retaliation in violation of the FEHA and ADA. The McDonnell Douglas burden-shifting test applies to these claims as well. See Yanowitz v. L'Oreal USA, Inc., 36 Cal.4th 1028, 1042 (2005); Michael v. Caterpillar Financial Services, Corp., 496 F.3d 584 (6th Cir. 2007). For plaintiff to establish his prima facie retaliation case, he must show that: (1) he was engaged in a protected activity; (2) defendant subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the employer's action. See Yanowitz, 36 Cal.4th at 1042; Passantino v. Johnson & Johnson Consumer Products, Inc., 212 F.3d 493, 506 (9th Cir. 2000).

Plaintiff's retaliation claims have the same problem as

his disability discrimination claims. Even if plaintiff could meet the minimal requirements for establishing a prima facie case, he cannot rebut defendant's nondiscriminatory reasons for its conduct because there is no evidence in this record that defendant retaliated against plaintiff **because** of any protected activity. In support of his retaliation claims, plaintiff again relies on the evidence which was discussed earlier. It does not help plaintiff because it does not connect defendant's alleged retaliatory actions to plaintiff's medical leave or any of plaintiff's complaints about defendant's alleged discriminatory practices. Plaintiff also introduces his testimony that he had complained to Captain Agnini that he was being punished for taking a medical leave of absence. Bakhit Declaration at ¶ 29. While this testimony, as well as testimony that Captain Agnini sought to terminate "weaker pilots," may help plaintiff in setting out his prima facie case, it does not show that defendant's reasons for requiring plaintiff to get recertified and then terminating him were pretextual.[6]

Plaintiff further points out that John Mix, a co-worker, testified that defendant was on a "witch hunt" for plaintiff because he took an extended medical leave. But this mischaracterizes Mix's testimony. Mix never mentioned

---

[6] Any argument from plaintiff that there is a causal link between his termination and leave of absence since the two events were close in time is not persuasive under the circumstances of this case. Due to FAA regulations, defendant was required to train and recertify plaintiff and other pilots immediately after they returned from their leaves of absence which explains the proximity of the two events.

11

1 anything with respect to plaintiff's medical leave.  Rather,
2 Mix testified that defendant may be on a "witch hunt" because
3 of plaintiff's performance.  Mix Deposition at 25-28.  This
4 sums up the critical problem with plaintiff's claims which he
5 is unable to overcome.  He attempts to characterize
6 defendant's acts as unlawful practices such as discrimination
7 and retaliation, but the evidence shows that defendant was
8 focused on plaintiff's, and other pilots', performance.
9 Plaintiff has not pointed to any evidence in the record that
10 shows defendant's nondiscriminatory reasons for its employment
11 actions were pretextual.  Defendant's motion is therefore
12 **GRANTED** with respect to plaintiff's FEHA and ADA retaliation
13 claims.
14     Lastly, defendant moves for summary judgment on
15 plaintiff's wrongful termination in violation of public policy
16 claim.  This claim is predicated on plaintiff's underlying
17 discrimination and retaliation claims.  Because I have granted
18 defendant summary judgment on these underlying claims, summary
19 judgment is also appropriate for plaintiff's wrongful
20 termination claim.
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

For the foregoing reasons, defendant's motion for summary judgment is **GRANTED** in its entirety.[7]

Dated: August 5, 2011

_____
Bernard Zimmerman
United States Magistrate Judge

G:\BZALL\-BZCASES\BAHKIT V. POLAR AIR\ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (AFTER HEARING).wpd

---

[7] In view of this disposition in favor of defendant, I do not address each of defendant's evidentiary objections to plaintiff's lengthy statement of 245 separate facts.